IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR No. 11-254 |
| | ) CV No. 14-211 |
| BALAZS TARNAI | ) |

**OPINION AND ORDER**

**SYNOPSIS**

On January 23, 2013, Defendant pleaded guilty to one Count of producing material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2251; the remainder of the seven-count superseding indictment was dismissed pursuant to the plea agreement, although Defendant acknowledged responsibility for the conduct charged therein. Pursuant to a stipulation in the plea agreement, Defendant was sentenced to a term of 180 months of imprisonment. Before the Court is Defendant's counseled Motion pursuant to 28 U.S.C. § 2255. In his Motion, Defendant contends that his counsel was ineffective when he failed to communicate Defendant's acceptance of an earlier plea offer that would have resulted in a five-year term of incarceration, and that Defendant accepted a later, less favorable plea offer as a result. The Government has filed a Motion to Dismiss Defendant's petition based on a collateral attack waiver in Defendant's plea agreement.[1] On July 21, 2016, the parties appeared at an evidentiary hearing on Defendant's Motion, with a Hungarian interpreter present in a standby capacity. Defendant's retained counsel participated in the hearing, and filed pre- and post-

---

[1] Briefing was completed on the parties' Motions on April 28, 2014. On November 16, 2015, Defendant filed a "status report," asserting that the Court's failure to rule on his Section 2255 Motion violated his due process rights, and indicating that he might seek mandamus relief in appellate court. This matter was transferred to my docket on February 23, 2016. On February 25, 2016, in order to expedite the resolution of the Motions, I scheduled an evidentiary hearing for March 9, 2016. At Defendant's request, the hearing was continued.

1

hearing briefs, on his behalf. For the following reasons, the Government's Motion will be granted, and Defendant's denied.

I. APPLICABLE STANDARDS

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962).

II. BACKGROUND

In this case, the Government has proffered a letter dated February 29, 2012, advising then-defense attorney Alexander Lindsay, that it contemplated filing additional charges following a forensic examination of Defendant's computer. That examination led to the discovery of surreptitious video recordings of young boys using Defendant's bathroom, and the Government contemplated adding charges for producing illegal materials in violation of 18 U.S.C. § 2251. The Government, at that time, indicated that it was willing to discuss a possible plea agreement prior to making a final determination regarding additional charges.

Accordingly, by letter dated April 19, 2012, the Government proposed a plea agreement, by way of a letter marked "DRAFT." The proposal provided that Defendant would plead guilty to Count I of the indictment, charging a violation of 18 U.S.C. § 2252(a)(2), and acknowledge responsibility for the remaining Counts. It also included a waiver of collateral attack rights. The proposed plea outlined and contemplated an offense level of 28, which would have generated an advisory guideline range of 78-97 months. Count I of the indictment carried a mandatory minimum sentence of five years. The agreement also noted that the penalty may be a term of imprisonment of not more than ten years.

At a July 21, 2016 evidentiary hearing on Defendant's Motion, Ms. Baker testified that she called Mr. Lindsay in mid-May, 2012, at Defendant's request, that she spoke with Mr. Lindsay, and that she told him that Defendant wanted to accept the Government's offer. Ms. Baker was not present at any of Mr. Lindsay's conversations with Defendant, and was not aware of conversations between the two after Ms. Baker's telephone call to Mr. Lindsay. Ms. Baker does not recall Mr. Lindsay stating that he would accept the offer, but he indicated that he would discuss it. Evidentiary Hearing Transcript, pp. 7-10, 12, 13.

Defendant testified that Mr. Lindsay discussed the plea offer with him, and that he initially intended not to take it, and advised counsel accordingly. Then, he consulted with his family and decided to take the offer. He recalled discussing with Mr. Lindsay "more than once" whether he would accept the offer. He was unable to reach Mr. Lindsay at first, so he contacted Ms. Baker. Later that day, Defendant reached Mr. Lindsay by telephone. When he spoke to Mr. Lindsay, Defendant said, "I asked him to please take the plea offer for me." Mr. Lindsay advised Defendant "it was all right. He would take it." Id. at 17-19.

Defendant offered the following testimony regarding his response to the plea offer:

GOVERNMENT: Isn't it true that when Mr. Lindsay first told you about the government's April of 2012 plea offer, you told him you were innocent of the charges?

DEFENDANT: I can't recall.

Id. at 28.

\*\*\*

DEFENSE COUNSEL: Did it take you a while to admit to yourself you were not innocent?

DEFENDANT: Yes.

COUNSEL: What did you tell Mr. Lindsay about the first plea offer?

> DEFENDANT: That originally I wasn't thinking of accepting it but I had changed my mind.
>
> COUNSEL: Would you have accepted that plea offer if you had been able to?
>
> DEFENDANT: Yes.

Id. at 28-29.

Mr. Lindsay, in turn, testified that "what [Defendant] continued to maintain is his absolute innocence in the case, that he did not commit the crimes...we couldn't enter a plea of guilty because he didn't admit his guilt." Id. at 32. He stated as follows:

> MR. LINDSAY: The problem with Mr. Tarnai was he insisted on his innocence of the charges up until the very end and we discussed this with him at substantial length, he could not enter a plea of guilty – we didn't even get to the specifics of the plea agreements because he steadfastly indicated that he was innocent of the charges.[2]
>
> GOVERNMENT: And you couldn't have him plead guilty if he was saying he was innocent of the charges why?
> **
>
> MR. LINDSAY: We talked to Mr. Tarnai about the fact that there would be a colloquy with the judge taking the plea. It's a detailed, substantial colloquy in federal court and that he would be asked in no uncertain terms whether he admitted that he had done the acts with which he was accrued, and if he could not say that he did it, then the Court would not accept his plea regardless of whatever the terms were. So, as far as what we discussed with Mr. Tarnai, can you admit your guilt in this situation, and he would not and could not. So our position was we couldn't ethically or legally put him in front of a federal judge when he was telling us he was innocent of the charges.

Id. at 38-39.

Mr. Lindsay further explained:

---

[2] Upon questioning by defense counsel, Mr. Lindsay later explained his testimony that "we didn't get to the specifics" as follows: "What I said was as we never got – as far as accepting the plea, we met with Mr. Tarnai, and with regard to the – we discussed the specifics of the plea offer. We told him exactly what the terms were, and we told him what he would have to go through to accept the plea, which he would have to respond to the Court's questions and he would have to admit his guilt...I don't recall that I went into the specifics....If I said that [we didn't get to the specifics], what I meant was is this, is that we went over the letters with Mr. Tarnai and with regard to going into the specifics of entering a plea. We didn't get to that point because he steadfastly indicated he was innocent." Evidentiary Hearing Transcript, pp. 49-50.

4

> [E]very time there was a plea letter we received, what we did, Mr. Smith and myself, would take the plea letter, go over the terms of the plea letter with Mr. Tarnai and when we would get to the point where we discussed whether or not he could admit that he did these things, he said he could not.

Id. at 50.

James Smith, a paralegal who worked with Mr. Lindsay on Defendant's case, testified as follows:

> I mean, he maintained his innocence throughout and we explained to him that he would have to appear in front of a judge of this Court and that there would be a colloquy and he would have to acknowledge his guilt and that he would have to convince a judge of his guilt and the facts that he would have to admit to would be whatever the government proffered as the evidence against him…As the evidence continued to roll in, at some juncture it just becomes damage control but he steadfastly maintained his innocence….
>
> \*\*\*
>
> Well, the problem with it was he continued to steadfastly maintain his innocence. He said he wanted to take a plea but he said he was not going to admit guilt, and we tried to explain to him the nature of what would happen during a colloquy with the judge.

Id. at 59, 63.

Mr. Smith stated that Mr. Lindsay "couldn't put [Defendant] before the Court knowing that he was going to say I'm innocent." Id. at 64.

By letter dated May 23, 2012, the Government wrote to defense counsel, confirming its understanding that counsel and Defendant had met, and Defendant was unwilling to accept the five-year minimum represented by the plea deal.

Defendant declined a second plea offer, dated June 18, 2012. At that point, the Government had uncovered additional evidence. Defendant testified that he declined this second plea offer, because Mr. Lindsay advised him that they would be able to have certain evidence

5

suppressed. Id. at 19-20. Defendant pursued a suppression motion, which was denied following a hearing. On the eve of trial, Defendant agreed to plead guilty, and accepted the Government's third plea offer.

In this case, the operative, ultimately-accepted plea agreement is dated January 23, 2013, and reads, in pertinent part, as follows:

> Balazs Tarnai further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

In the plea agreement, the Government retained the right to advise the sentencing court of the full nature and extent of the involvement charged in the superseding indictment. The parties agreed that the appropriate sentence would include a term of imprisonment of fifteen years, and a life term of supervised release. On January 13, 2013, Defendant and his counsel signed the agreement.

At the plea and sentencing hearing on January 13, 2013, the Defendant, with an interpreter present, acknowledged that he understood everything that the Court was saying. Counsel for the Government then read the terms of the plea agreement into the record. Then, the following exchanges occurred:

> GOVERNMENT: [P]rior to the filing of the superseding indictment in this case and the suppression hearing, there were two written proposals in the form of draft plea agreements sent to Defendant's counsel dated April 19, 2012 and June 18, 2012. And more recently in the last month there was one informal discussion between counsel for the Government and defense counsel not reduced to writing regarding another possible term of years which Defendant rejected.
>
> DEFENSE COUNSEL: That's correct, your honor.
>
> \*\*\*
>
> COURT: You're currently represented by attorney Al Lindsay. Are you satisfied with Mr. Lindsay's representation up to this point?

6

DEFENDANT: Yes.

\*\*\*

[Government counsel read the terms of the plea agreement into the record, including the collateral attack waiver.]

COURT: Was that review of the terms of the plea agreement consistent with your understanding of the plea agreement, Mr. Tarnai?

DEFENDANT: Yes.

\*\*\*\*

COURT: Furthermore, sir, you're waiving your right to file a motion to vacate sentence attacking your conviction or sentence and the right to file any other collateral proceeding attacking either your conviction or sentence. Do you understand those waivers?

DEFENDANT: Yes.

\*\*\*

COURT: Has anyone coerced you or forced you into pleading guilty?

DEFENDANT: No.

COURT: Has anyone threatened you?

DEFENDANT: No.

COURT: Would it be a fair statement and an accurate statement that your plea of guilty to Count IV is the product of your own free and rational choice?

DEFENDANT: Yes.

\*\*\*

COURT: Mr. Tarnai, is that your signature that appears on the plea agreement letter?

DEFENDANT: Yes.

COURT: And you executed this plea agreement letter of your own free will?

DEFENDANT: Yes.

Plea Hearing Transcript, pp. 6, 22-24, 31, 32, .

At the evidentiary hearing, Mr. Lindsay testified that when Defendant decided to plead guilty on January 23, 2013, he reviewed the terms of the plea agreement with Defendant. In response to the Government's question regarding whether he reviewed with Defendant the collateral attack waiver, he responded "we did." Evidentiary Hearing Transcript, p. 39. He further testified as follows:

> GOVERNMENT: Did you do this in a careful and thorough manner?
>
> MR. LINDSAY: We went over it in substantial detail, yes.
>
> GOVERNMENT: Did the Defendant affirmatively represent to you that he understood the rights he was waiving?
>
> MR. LINDSAY: Yes.

Id.

## III. GOVERNMENT'S MOTION TO DISMISS

### a. Collateral Attack Waiver

I first address the Government's contention that Defendant's waiver of his collateral attack rights, via his guilty plea, precludes his Motion.

Generally, in this Circuit, waivers of the right to collateral attack are valid if entered into knowingly and voluntarily. United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001). Claims challenging the voluntariness of a collateral attack waiver, or the effectiveness of counsel with respect to the waiver itself, may survive the waiver. Accordingly, courts will consider an ineffectiveness claim that relates directly to the negotiation of the waiver itself. United States v. Fagan, No. 04-2176, 2004 U.S. Dist. LEXIS 22456, at **9-11 (E.D. Pa. Oct. 4, 2004). In other words, unless the negotiation of the waiver itself was tainted, the waiver may be upheld. Id. In this context, it is important to note Supreme Court's observation that "the representations of the

8

defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). I am mindful, too, of the "fundamental interest in the finality of guilty pleas." Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

At the plea colloquy in this case, Defendant, under oath and in open court, acknowledged the terms of the plea, including the waiver, and accepted them. At no time did he indicate, or suggest that he was in any way prevented from indicating, that he had intended to accept an earlier plea offer. He did not disagree with the Government's description of the earlier plea offers, and his rejection thereof. Moreover, Defendant necessarily knew, well before and up until he entered a guilty plea, that counsel had not accepted any prior offers on his behalf. Defendant suggests that he failed to bring the matter to the Court's attention because he did not understand the "technicalities" involved, was not familiar with the legal system, and was instructed by his counsel not to speak unless he was asked a question. Assuming that these factors explain Defendant's silence, however, they do not address his affirmative, sworn declarations. The Court asked Defendant several relevant, direct questions: whether he understood that he was waiving his collateral attack rights; whether the Government's recitation of the terms of the plea agreement was consistent with his understanding of the agreement; and whether he had been satisfied with Mr. Linsday's representation.[3] Defendant responded in the affirmative to each question. Taking into account both Defendant's silence and his speech, it is

---

[3] Certainly, as Defendant argues, his indication of satisfaction with Mr. Lindsay's representation does not preclude his ineffectiveness claim. The question did, however, provide one of several opportunities, in response to a question directed to him by the Court, for Defendant to raise any concerns regarding an earlier plea offer. I note that Defendant's suggestion that "[n]o court would accept a guilty plea from a defendant who did not say that he was satisfied with his lawyer" might be deemed to apply, as well, to a defendant who will not admit guilt.

9

significant that he failed to raise any concerns with the Court at any time prior to the conclusion of his plea hearing.

In addition, there is no suggestion that Defendant, who holds a Ph.D., was a professor at the time of his arrest, and is fluent in English, was unable to or did not understand the terms of his plea or waiver. At the evidentiary hearing, counsel testified that he reviewed the waiver with Defendant in substantial detail, and that Defendant affirmatively indicated that he understood the rights that he was waiving. Defendant concurred that counsel reviewed the plea agreement with him – albeit in a "short way"-- prior to the plea hearing. At the plea colloquy, Defendant acknowledged the waiver and stated, on the record, that he accepted it. There are simply no grounds for finding that the agreement that he actually entered on January 23, 2013 was anything other than knowing and voluntary.

Defendant further suggests, however, that ethical rules prohibit enforcement of the waiver. In so doing, he argues that counsel knew he should have accepted the earlier plea offer, and thus favored the waiver in order to insulate himself from later claims. I note, however, that the earlier plea offers both also included waivers of collateral attack rights. This undermines Defendant's contention that counsel acted out of self-interest with respect to the chronology of the pleas.[4] Further, there is no suggestion in the record, other than the tenuous circumstances to which Defendant points, that counsel acted out of self-interest. Moreover, although the attorney ethics surrounding such waivers have recently been called into question, our Court of Appeals has affirmed their enforceability as a legal matter. E.g., Muller v. Sauers, 523 Fed. Appx. 110, 111-12 (3d Cir. 2013). As Ethics Opinion 12-02 acknowledges, the Advisory Committee's

---

[4] Mr. Lindsay also indicated that each of the three times they received a plea offer, each of which contained a collateral attack waiver, the terms of the offer were reviewed with Defendant. Mr. Lindsay's testimony in this regard has not been contradicted. Although my decision today does not rely in any way on this unestablished fact, I note that this testimony suggests that the accepted plea did not represent Defendant's first exposure to the concept of a collateral attack waiver.

10

position is "aside from whether the courts might approve such waivers." NACDL Ethics Advisory Committee Formal Opinion 12-02 (Oct. 2012). Further, Ethics Advisory Opinions are not binding on federal courts. For these reasons, collateral attack waivers continue to be enforced in this Circuit. Cf. United States v. Grimes, 739 F. 3d 125 (3d Cir. 2014); United States v. Gardner, 2015 U.S. Dist. LEXIS 103762 (W.D. Pa. Aug. 7, 2015).[5] The extent or propriety of the Government's compliance with its own internal policies is not, in this context, a matter for this forum. In sum, Defendant's ethics argument is unavailing.

### b. Miscarriage of Justice

I will next consider whether enforcing the waiver would work a miscarriage of justice. In so doing, I am to consider "[t]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." United States v. Mabry, 536 F. 3d 231, 242 (3d Cir. 2008) (quoting United States v. Teeter, 257 F. 3d 14, 25-26 (1st Cir. 2001)). Courts are to apply the miscarriage of justice exception "sparingly and without undue generosity." United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)).

Considering these factors, and all of the attendant circumstances, I find that enforcing the waiver does not work a miscarriage of justice. For example, as discussed infra, the alleged error is not clear, Defendant acquiesced entirely in the result and did so on the record, the error does not relate to the validity of the underlying conviction for the crime charged, and invalidating the plea would certainly have a significant impact on the Government. Accordingly, enforcing the waiver would not work a miscarriage of justice.

---

[5] Khattak remains in force. See, e.g., United States v. Creque, 2016 U.S. App. LEXIS 22609 (3d Cir. Dec. 20, 2016).

11

## IV. DEFENDANT'S SECTION 2255 MOTION

### a. Ineffective Assistance of Counsel

Although the waiver will be enforced, I separately address the merits of Defendant's argument that counsel was ineffective in failing to communicate his acceptance of an earlier plea deal. Cf. United States v Shedrick, 493 F. 3d 292, 297 (2007). As my sister Court has observed, "the Third Circuit has exercised its jurisdiction to consider ineffective assistance of counsel claims even when a plea agreement bars such a collateral attack,...and an adjudication on the merits is always preferable." Madison v. United States, 2016 U.S. Dist. LEXIS 57665, at *4 n. 1 (D.N.J. Apr. 28, 2016). In this particular case, it is valuable to clarify that even absent the waiver, Defendant's Motion would be denied on substantive grounds.

In the context of an ineffective assistance of counsel claim, a court should be "highly deferential" when evaluating an attorney's conduct; there is a "strong presumption" that the attorney's performance was reasonable. Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "It is...only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F. 2d 702, 711 (3d Cir. 1989).

To demonstrate that counsel was ineffective, a defendant must show that counsel's performance fell below "the wide range of professionally competent assistance" and also that the deficient conduct prejudiced defendant. Strickland, 466 U.S. at 687. Counsel's conduct must be assessed according to the facts of the particular case, viewed as of the time of counsel's conduct. Id. at 689. Under the prejudice prong, the pertinent question is "whether there is a reasonable probability that, absent the errors," the result would have been different. Id. at 695; see also Gray, 878 F.2d at 709-13. The prejudice prong of Strickland rests on "whether counsel's deficient

12

performance renders the result of the . . . proceeding fundamentally unfair," or strips the defendant of a "substantive or procedural right to which the law entitles him." Id. at 844.

### 1. Counsel's Performance

First, I look to Strickland's initial inquiry, and examine whether counsel's performance was deficient. Defendant casts the story as one in which an attorney acted as unilateral, ethically challenged "gatekeeper" with respect to his client's wish to plead guilty, and determined that he could not allow his client to act on his wish to plead. This argument is no doubt occasioned by Mr. Lindsay's testimony that he could not "ethically or legally allow" his client to enter a plea. This characterization of the issue, however, obscures the material question at bar. Defendant's Motion does not hinge on Mr. Lindsay's decision, based solely on his own ethics, that he could not "allow" Defendant to plead; it hinges, instead, on the adequacy of Mr. Lindsay's approach to Defendant's incomplete acceptance of the plea offer.[6]

The Court credits and accepts the testimony of both Defendant and Ms. Baker that they each communicated to Mr. Lindsay that Defendant wished to accept the first plea offer. It also accepts, however, that Defendant told counsel that he was unwilling to admit guilt, which counsel explained to Defendant was part and parcel of a guilty plea. Defendant testified that he does not recall telling Mr. Lindsay, in the context of discussing the first plea offer, that he was innocent. He offered no evidence, however, to contradict the testimony of Messrs. Lindsay and Smith that Defendant did, in fact, maintain his innocence. Likewise, Defendant has proffered no evidence that he was willing to admit to the charged conduct at that time, or that he advised Mr. Lindsay as such. Messrs. Lindsay and Smith both testified that the plea process and the necessity

---

[6] There is no dispute that counsel communicated to Defendant the first plea offer. Accordingly, there is no need to separately address Defendant's contentions regarding counsel's duty to communicate an informal plea offer.

13

of admitting guilt therein were explained to Defendant, and that Defendant was unwilling to admit guilt. That testimony remains uncontradicted.

The operative facts, then, are that Defendant told his counsel that he wished to accept the plea offer. Accepting the plea offer would require him to "plead guilty," --i.e., declare his responsibility for the wrongdoing with which he was charged – but, at the pertinent time, Defendant maintained that he was unwilling to do so. As a result, counsel then communicated to the Government a rejection of the plea. There is no evidence that Defendant communicated to Mr. Lindsay both his wish to accept the plea, and a newly acquired willingness to admit guilt, in connection with the April 19, 2012 plea offer.

Thus, the question before the Court, to adopt Mr. Smith's words, is whether the Constitution requires counsel to communicate acceptance of a plea offer when his client "said he wanted to take a plea but he said he was not going to admit guilt"? To locate a deficiency here would require a defense attorney to make a senseless choice between relaying acceptance of an offer, when the client does not actually accept the sine qua non of the offer – i.e., the admission of guilt -- or rendering ineffective assistance. Indeed, a Court is required to determine that there is a factual basis for a plea, prior to entering judgment on a guilty plea. Fed. R. Crim. P. 11(b)(3). It is well-settled that counsel is not ineffective for failing to take frivolous action, and there is no reason to believe that the plea would have been accepted absent an admission of guilt. Troublingly, finding ineffective assistance here would also effectively "endors[e]... precedent that ... might suggest a duty on the part of defense counsel to arm-twist a client who maintains his innocence into pleading guilty." United States v. Pitcher, 559 F.3d 120, 125 (2d Cir. 2009). On the present record, I find that counsel's conduct in rejecting the April, 2012 plea offer on

Defendant's behalf did not fall below the wide range of reasonably competent assistance contemplated by applicable standards.

## 2. Prejudice

Even assuming that counsel was ineffective, the second prong of Strickland remains a difficult hurdle for Defendant. In a case such as this one, in which a defendant pleads guilty and then claims that ineffective assistance of counsel caused him to lose a more favorable plea offer, "Strickland's inquiry into whether 'the result of the proceeding would have been different,' requires looking ... at ... whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Missouri v. Frye, 566 U.S. 134, 132 S. Ct. 1399, 1410, 182 L. Ed. 2d 379 (2012).[7] Moreover, Defendant must also show a reasonable probability that "the prosecution would not have withdrawn [the proposed plea] in light of intervening circumstances." Lafler v. Cooper, 132 S. Ct. 1376, 1385, __ U.S. __, 182 L. Ed. 2d 398 (2012). The Supreme Court has clarified as follows:

> In order to complete a showing of Strickland prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted and implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it.

Frye, 132 S. Ct. at 1410 (citations omitted).

If I were to find the first prong of Strickland fulfilled, Defendant's claim would likely fail at the second. Again, I accept Defendant's evidence that he wished to accept the earlier plea offer and that his wish was conveyed to his attorney. That evidence, however, does not establish

---

[7] Although Frye did not address informal plea offers, courts have expressed doubt that the failure to convey acceptance of an informal offer should be disregarded under the Sixth Amendment ineffectiveness claim. See United States v. Archuleta, 2016 U.S. Dist. LEXIS 108516, at **20-21 (D.N.M. Apr. 6, 2016). I assume without deciding Frye applies here.

15

a reasonable probability that neither the trial court nor the prosecution would have prevented the offer from being accepted or implemented. Defendant expressed his unwillingness to admit guilt at the pertinent time. Again, he has offered no grounds for concluding that the Court would have accepted Defendant's plea if he failed to admit guilt during the colloquy; likewise, he has offered no reason to believe that the Government, had it been advised that Defendant wished to accept the plea deal without admitting guilt, would have proceeded with the remaining terms of the plea. Indeed, any such conclusion would find no support in this Court's knowledge and experience of the Court's and the Government's practices within this District.[8]

## CONCLUSION

In sum, Defendant waived his right to collaterally attack his conviction and sentence, and the Government's Motion will be granted. Had he not done so, however, I would find that Defendant has not demonstrated either deficient performance or prejudice, within the meaning of Strickland. The Government's Motion will be granted, and as a result, Defendant's denied.

---

[8] Under 28 U.S.C.§ 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated in the body of the Opinion, Defendant has not made such a showing. To the extent that I am required to decide whether a certificate of appealability shall issue, none shall issue.

**ORDER**

AND NOW, this 12th day of January, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that the Government's Motion to Dismiss is GRANTED, and Defendant's Motion to Vacate is DENIED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose

Senior Judge, U.S. District Court